**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| JUST HIRE LLC.<br><br>Plaintiff,<br><br>v.<br><br>SKL ROBOTICS LTD d/b/a HUMANOID,<br><br>SKL VC DMCC,<br><br>&<br><br>ARTEM SOKOLOV,<br><br>Defendants. | CIVIL ACTION FILE NO.<br><br>1:25-cv-05449-TRJ |

## COMPLAINT

COMES NOW, Plaintiff JUST HIRE LLC, by and through its undersigned counsel of record, and hereby files its Complaint against Defendants SKL VC DMCC, SKL ROBOTICS LTD d/b/a HUMANOID, and ARTEM SOKOLOV (collectively, the "Defendants"), alleging as follows:

## PRELIMINARY STATEMENT

1. Plaintiff brings this action seeking monetary relief for damages stemming from Defendants' breach of contract.

2. Defendants have refused to pay Plaintiff for services rendered under a valid and binding agreement.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds seventy-five thousand dollars ($75,000.00) and because the parties are citizens of a State and citizens or subjects of a foreign state.

4. Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(3) because the Defendants are subject to the personal jurisdiction of this Court and because the parties have contractually stipulated to the venue of Fulton County, GA.

## PARTIES

5. Plaintiff JUST HIRE LLC ("JH" or "Plaintiff") is a limited liability company existing under the laws of the State of Georgia with a principal place of business located at 1805 River Falls Drive, Roswell, GA 30309.

6. Plaintiff is a staffing agency that operates within the technology sector.

7. Defendant SKL ROBOTICS LTD ("Humanoid") is a private limited company organized under the laws of the United Kingdom, Company No. 15702488, with its registered office at Fourth Floor, 4-8 Ludgate Circus, London EC4M 7LF.

8. Defendant SKL ROBOTICS LTD does business as Humanoid, a robotics company that builds humanoid robots for industrial automation.

9. Humanoid is founded, owned, and operated by Defendant ARTEM SOKOLOV.

10. At all relevant times, Humanoid functioned as an instrumentality of Defendant ARTEM SOKOLOV rather than a separate and independent entity.

11. Defendant SKL VC DMCC ("SKL VC") is a venture capital firm headquartered at BA1362, DMCC Business Centre, Level No 1 Jewellery & Gemplex 3, Dubai, United Arab Emirates.

12. SKL VC is founded, owned, and operated by Defendant ARTEM SOKOLOV.

13. At all relevant times, SKL VC functioned as an instrumentality of Defendant ARTEM SOKOLOV rather than a separate and independent entity.

14. Defendant ARTEM SOKOLOV ("Sokolov") is a natural person whose address is currently unknown.

15. Sokolov is the founder and principal of Humanoid and SKL VC, as well as affiliated entities.

16. At all relevant times, Sokolov owned, controlled, and exercised complete operational authority over Defendants Humanoid and SKL VC.

## THE AGREEMENT AND PERFORMANCE

17. In or around 2024, Lewis Adams-Dunstan created Plaintiff to operate his business, connecting talented individuals in the technology industry with willing employers.

18. A client of Plaintiff's who knew that SKL VC needed assistance with staffing introduced Plaintiff to Defendants.

19. On or around May 24th, 2024, Plaintiff and Defendants entered into a valid and enforceable contract, the "DIRECT HIRE / PERMANENT PLACEMENT SERVICES AGREEMENT" (the "Agreement"), a true and correct copy of which is attached hereto as Exhibit A.

20. The Agreement was a valid and binding contract.

21. Defendants structured the transaction such that SKL VC was used to execute the Agreement while Humanoid received the services and made

payments, allowing Defendants to selectively invoke corporate separateness to avoid contractual responsibility.

22. The Agreement was enacted between Plaintiff and SKL VC.

23. Sokolov signed the Agreement on behalf of SKL VC.

24. At the time the Agreement was executed, Sokolov had also founded Humanoid to operate a robotics business started as part of SKL VC.

25. Defendants, through their executives and agents, directed Plaintiff to identify Humanoid as the proper party for purposes of performance under the Agreement.

26. Although SKL VC is identified as the contracting party in the Agreement, Plaintiff did not have substantive dealings with any separate management or operational personnel of SKL VC.

27. Although SKL VC is identified as the contracting party in the Agreement, Plaintiff's communications concerning staffing needs, scheduling, performance, and payment were conducted exclusively with Sokolov or representatives of Humanoid.

28. Although SKL VC is identified as the contracting party in the Agreement, the staffing services contemplated by the Agreement were provided exclusively for the benefit of Humanoid.

29. Although SKL VC is identified as the contracting party in the Agreement, Plaintiff was instructed to send all invoices for services arising under the Agreement to Humanoid.

30. Although SKL VC is identified as the contracting party in the Agreement, Plaintiff sent all invoices for services arising under the Agreement to Humanoid.

31. Although SKL VC is identified as the contracting party in the Agreement, Humanoid received, approved, and paid all invoices for services provided by Plaintiff under the Agreement.

32. Although SKL VC is identified as the contracting party in the Agreement, all payments for services rendered under the Agreement were made by Humanoid, not SKL VC.

33. Sokolov exercised control over staffing decisions, approvals, and ongoing performance under the Agreement on behalf of both SKL VC and Humanoid.

34. Plaintiff reasonably understood, based on Defendants' conduct, that it was dealing with a single, unified business enterprise controlled by Sokolov.

35. Defendants' use of multiple affiliated entities in connection with the Agreement obscured responsibility for performance and payment obligations.

36. Defendants received the benefits of Plaintiff's services through Humanoid while invoking SKL VC's formal status as the contracting party.

37. Sokolov personally directed and benefited from the services provided under the Agreement through Humanoid and SKL VC.

38. Absent disregarding Defendants' corporate separateness, Plaintiff faces a substantial risk of being left without a meaningful contractual remedy despite Defendants' receipt of the benefits of Plaintiff's services.

**<u>DEFENDANTS' BREACH</u>**

39. On or around October 30th, 2024, Plaintiff introduced one Hyungju Andy Park ("Park") to Humanoid.

40. Defendants did not notify Plaintiff that Humanoid hired Park.

41. On or around November 27th, 2024, Plaintiff introduced one Ludwig Faerber, CEO of N ROBOTICS ("Faerber"), to Sokolov and other Humanoid executives.

42. Defendants did not notify Plaintiff that Humanoid engaged Faerber or his company N ROBOTICS for at least one project.

43. On or about March 5th, 2025, Plaintiff emailed Humanoid executives reiterating the parties' agreement as to fees and inquiring whether Defendants had entered into any formal engagement with Faerber or N ROBOTICS.

44. On or about March 10th, 2025, Defendants falsely told Plaintiff that they had not engaged Faerber or N ROBOTICS.

45. On or around June 23rd, 2025, Park officially commenced employment at Humanoid.

46. Plaintiff was not alerted to the hiring of Park by Defendants, but from a third party.

47. On or around June 26th, 2025, Plaintiff sent Humanoid an invoice for the introduction to Park (the "Park Invoice").

48. Defendants did not pay the Park Invoice.

49. Shortly after learning that Defendants had hidden the hiring of Park from him in order to avoid payment, Plaintiff discovered that N ROBOTICS had been involved in at least one project with Defendants.

50. Plaintiff reached out to Faerber, who confirmed that he had conducted business with Defendants.

51. Plaintiff has issued several formal demands for the compensation owed to him, but the Parties have been unable to resolve this dispute.

**COUNT I**

**Breach of Contract – O.C.G.A. §13-1-1 *et seq*.**

52. Plaintiff repeats and realleges paragraphs 1 through 51 hereof, as if fully set forth herein.

53. Plaintiff and Defendants were engaged in a valid and binding contract, the Agreement.

54. The Defendants are each jointly liable under the Agreement.

55. Plaintiff performed under the Agreement by making a number of introductions between Defendants and various individuals in the technology sector.

56. Defendants breached the Agreement by, *inter alia*, failing to notify Plaintiff that it had engaged Mr. Faerber or Mr. Park and failing to compensate Plaintiff for the respective introductions.

57. As a direct and proximate result of Defendants' actions, Plaintiff has been injured and is entitled to damages in an amount to be proven at trial.

**COUNT II**

**(In the Alternative to Count I)**

**Promissory Estoppel – O.C.G.A. §13-3-44**

58. Plaintiff repeats and realleges paragraphs 1 through 51 hereof, as if fully set forth herein.

59. Defendants promised to pay Plaintiff for each individual that they hired who was introduced to them as a result of his staffing and recruitment services.

60. Plaintiff relied on Defendants' promise and performed work on Defendants' behalf.

61. Defendants knew or should have known that their promise would induce Plaintiff to perform work on their behalf.

62. Defendants knew that Plaintiff would perform work on their behalf because Plaintiff had performed work on their behalf in the prior course of performance of the same contract.

63. As a direct and proximate result of Defendants' actions, Plaintiff has been injured and is entitled to damages in an amount to be proven at trial.

**COUNT III**

**(In the Alternative to Count I)**

**Quantum Meruit – O.C.G.A. §9-2-7**

64. Plaintiff repeats and realleges paragraphs 1 through 51 hereof, as if fully set forth herein.

65. Plaintiff performed a service that was valuable to Defendants by introducing Defendants to individuals within the technology sector.

66. On several prior occasions, Plaintiff performed the same service and was compensated by Defendants.

67. Plaintiff performed his services with the expectation of payment as outlined in the Agreement.

68. It was reasonable for Plaintiff to believe that he would be paid for his services because he had been paid for his services in the past.

69. Defendants accepted the value of Plaintiff's services by initiating business relationships with individuals introduced to them by Plaintiff.

70. Pursuant to O.C.G.A. §9-2-7, the law implies a promise to pay under such circumstances.

71. As a direct and proximate result of Defendants' actions, Plaintiff has been injured and is entitled to damages in an amount to be proven at trial.

**COUNT IV**

**Unjust Enrichment**

72. Plaintiff repeats and realleges paragraphs 1 through 51 hereof, as if fully set forth herein.

73. Plaintiff performed a service for Defendants by making introductions to Mr. Faerber and Mr. Park.

74. Defendants engaged in business with both Mr. Faerber and Mr. Park.

75. On information and belief, Mr. Faerber and Mr. Park performed services or engaged in work that is of value to Defendants.

76. Defendants have been enriched by nature of the work performed for them by Mr. Faerber and Mr. Park.

77. This enrichment would not have occurred but for Plaintiff's staffing and recruitment services.

78. It is unjust to allow Defendants to retain the benefits of services that they did not pay for.

79. As a direct and proximate result of Defendants' actions, Plaintiff has been injured and is entitled to damages in an amount to be proven at trial.

**COUNT V**

**Recovery of Expenses – O.C.G.A. §13-6-11**

80. Plaintiff repeats and realleges paragraphs 1 through 51 hereof, as if fully set forth herein.

81. Plaintiff has made multiple attempts to collect payment from Defendants, including by sending invoices, email communications, and formal demands.

82. Despite the existence of a clear and binding agreement, Defendants have refused to pay Plaintiff for services rendered.

83. Defendants have acted in bad faith by failing to comply with their contractual obligations.

84. Defendants have acted in bad faith by shifting contractual obligations and payments among affiliated entities to avoid accountability.

85. Defendants have caused Plaintiff unnecessary trouble and expense by forcing him to file suit to recover payment owed to him.

86. Pursuant to O.C.G.A. §13-6-11, a plaintiff may be allowed to recover the expenses of litigation under such circumstances.

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

1. That Defendants breached their contract with Plaintiff;
2. In the alternative, that Defendants breached an implied promise to Plaintiff;
3. That Defendants have been unjustly enriched at Plaintiff's expense; and,
4. That Defendants have caused Plaintiff unnecessary trouble and expense in prosecuting this action.
5. Awarding Plaintiff:
    a. Damages sustained by Plaintiff as a result of Defendants' conduct, in an amount to be proven at trial;
    b. Plaintiff's reasonable attorneys' fees and costs associated with Defendants' conduct;

c. Interest, including pre-judgment and post-judgment interest, on the foregoing sums; and,

d. Awarding such other and further relief as the Court deems just and proper under the circumstances.

This 22nd day of December, 2025.

**CONWAY EADER LLLP**

*/s/Jacob Medoff*
Jacob Medoff
GA Bar No. 211318
**Hurt Building**
50 Hurt Plaza SE
Suite 1142
Atlanta, Georgia 30303
Tel. 470.764.7164
jake@conwayeader.com

*Attorney for Plaintiff*