**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

JUST HIRE LLC,

Plaintiff,

v.

Civil Action File
No. 1:25-CV-05449-TRJ

SKL ROBOTICS LTD d/b/a
HUMANOID, SKL VC DMCC, &
ARTEM SOKOLOV,

Defendants.

**DEFENDANTS SKL ROBOTICS LTD D/B/A HUMANOID AND ARTEM SOKOLOV'S MOTION TO COMPEL ARBITRATION AND TO STAY OR, IN THE ALTERNATIVE, DISMISS THIS ACTION, AND BRIEF IN SUPPORT THEREOF**

Defendants SKL Robotics Ltd d/b/a Humanoid ("SKL Robotics") and Artem Sokolov ("Sokolov", together with SKL Robotics, the "Defendants"), specially appearing through undersigned counsel and without submitting to the jurisdiction of this Court, respectfully move this Court, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq*. (the "FAA"), for an order: (1) compelling Plaintiff Just Hire LLC ("Plaintiff") to arbitrate all of its claims against Defendants before the American Arbitration Association (the "AAA") in New York, New York; and (2) dismissing

this action with prejudice or, in the alternative, staying it pending the conclusion of arbitration. The grounds for this motion are set forth fully in the accompanying brief, which is incorporated by reference.

## INTRODUCTION

This dispute belongs in arbitration before the AAA in New York, not before this Court. The written contract between Plaintiff and Defendant SKL Robotics—a Placement Services Agreement executed January 22, 2025 (the "Placement Services Agreement")—contains a clear, unambiguous, and mandatory arbitration clause requiring *any* dispute arising out of or in connection with the agreement, including *any question regarding its existence, validity, or termination*, to be resolved exclusively by binding AAA arbitration in New York under New York law. The dispute Plaintiff seeks to litigate here—claims for fees allegedly owed for the introduction of two candidates (Andy Park and Ludwig Faerber) to SKL Robotics—arises directly out of and in connection with the very services governed by the Placement Services Agreement.

Under the FAA, this is an easy case. The Supreme Court has repeatedly held that the FAA reflects "a liberal federal policy favoring arbitration" and that arbitration agreements "must be rigorously enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339–40 (2011); *Am. Express Co.*

*v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). Where, as here, the parties have entered into a valid arbitration agreement and the dispute falls within its scope, the FAA *requires* the court to compel arbitration. 9 U.S.C. §§ 3–4; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.").

Plaintiff cannot evade arbitration by the simple expedient of suing on a different contract. Plaintiff attached to its operative complaint a May 24, 2024 contract that is, on its face, between Plaintiff and *non-party* SKL VC DMCC, a Dubai-based entity. (Doc. 9 Ex. A.) Defendants are not parties to that contract, as Defendants' motion to dismiss already establishes. (*See* Doc. 11 at 8–13.) The *only* written contract between Plaintiff and SKL Robotics is the January 22, 2025 Placement Services Agreement, which Plaintiff itself drafted, which Plaintiff's CEO signed, and which Plaintiff has invoked in its pre-suit correspondence and invoicing. (*See* Decl. of [DECLARANT], Ex. A (Placement Services Agreement); *see also* Doc. 11 at 9 n.4.) The arbitration clause in that agreement governs.

Even more fundamentally, the arbitration clause expressly delegates *any question regarding [the agreement's] existence, validity, or termination* to the

arbitrator. Under *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019), and the parties' incorporation of the AAA Commercial Arbitration Rules, the threshold question of whether the dispute is arbitrable is itself committed to the arbitrator. The Court need not, and may not, decide it.

Plaintiff's claims against Sokolov individually fare no better. Equitable estoppel principles, recognized in this Circuit, permit a non-signatory to invoke an arbitration clause where, as here, the signatory's claims rely on the underlying contract or treat the signatory and non-signatory interchangeably. *See MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (abrogated on other grounds); *Lawson v. Life of the South Ins. Co.*, 648 F.3d 1166, 1170–71 (11th Cir. 2011). Plaintiff treats Defendants interchangeably and predicates Sokolov's alleged liability entirely on his role as a principal of SKL Robotics.

For each of these independent reasons, the Court should compel arbitration and either dismiss this action with prejudice or stay it pending the outcome of arbitration.

## FACTUAL BACKGROUND

### A. The Parties and the Placement Services Agreement.

Plaintiff Just Hire LLC is a Georgia limited liability company. (Doc. 9 ¶ 5.) Defendant SKL Robotics is a private limited company organized under the laws of the United Kingdom, doing business as "Humanoid." (Doc. 9 ¶¶ 7–8.) Defendant Sokolov is a private individual residing in the United Kingdom. (Doc. 9 ¶ 14.) On January 22, 2025, Plaintiff and SKL Robotics executed a written Placement Services Agreement governing Plaintiff's provision of recruitment and placement services to SKL Robotics. The Placement Services Agreement was issued by Plaintiff's CEO, Mr. Lewis Adams-Dunstan, and signed by Mr. Ruslan Kosarenko, acting as a Director of SKL Robotics.

The Placement Services Agreement is the only direct written contract between Plaintiff and SKL Robotics. It expressly provides:

> This Agreement constitutes the entire agreement between the parties. Each party acknowledges that in entering into this Agreement it does not rely on any statement, representation, assurance, or warranty (whether made innocently or negligently) that is not set out in this Agreement unless stated otherwise in this Agreement.

(Placement Services Agreement § 16.1.) The agreement governs Plaintiff's identification and introduction of candidates for engagement by SKL Robotics, the fees payable for such introductions, and the conditions under which fees become payable. (*Id.* §§ 3, 4, 5.) The Placement Services Agreement is the precise contract that governs the candidate-introduction dispute Plaintiff has brought before this Court.

**B. The Mandatory Arbitration Clause.**

Section 14.1 of the Placement Services Agreement, captioned "Governing Law and Jurisdiction," provides in full:

> This Agreement is governed by the laws of the State of New York. Any dispute arising out of or in connection with this Agreement, including any question regarding its existence, validity, or termination, shall be referred to and finally resolved by arbitration administered by the American Arbitration Association (AAA) in accordance with its Commercial Arbitration Rules. The number of arbitrators shall be one. The seat of arbitration shall be New York, New York, USA. The language to be used in the arbitration shall be English.

(Placement Services Agreement § 14.1 (emphasis added).) The arbitration clause is sweeping in three critical respects: (1) it is mandatory, requiring *any* dispute to be "referred to and finally resolved" by arbitration; (2) it expressly includes "any question regarding [the agreement's] existence, validity, or termination," thereby delegating threshold arbitrability issues to the arbitrator; and (3) it incorporates the AAA Commercial Arbitration Rules, which themselves delegate questions of arbitrability to the arbitrator. *See* AAA Commercial Arbitration Rule R-7(a) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.").

**C. Plaintiff's Claims Arise Out of the Placement Services Agreement.**

Plaintiff's claims, distilled to their essentials, are that SKL Robotics allegedly hired Andy Park and engaged Ludwig Faerber's company following Plaintiff's introductions, and allegedly failed to pay associated fees. (*See* Doc. 9 ¶¶ 39–51.) Those allegations describe precisely the candidate-introduction services governed by Sections 3, 4, and 5 of the Placement Services Agreement. Plaintiff issued its invoice (No. INV-0015-Humanoid) under the terms of the January 22, 2025 Placement Services Agreement. The dispute is therefore squarely "arising out of or in connection with" the Placement Services Agreement and falls within Section 14.1's mandate.

**D. Plaintiff Has Long Been on Notice of the Arbitration Clause.**

Plaintiff has known about the Placement Services Agreement's arbitration clause since well before it filed this action. In August 2025—before the original Complaint was filed in September 2025—Defendants' U.K. solicitors expressly invoked the Placement Services Agreement in pre-suit correspondence with Plaintiff's counsel. Defendants' prior U.S. counsel referenced the arbitration clause directly in the motion to dismiss the First Amended Complaint. (*See* Doc. 11 at 9 n.4 ("Plaintiff and Humanoid are parties to another contract for services with a forum selection clause of New York and a mandatory arbitration provision.").) Plaintiff cannot credibly claim surprise. Plaintiff's decision to file in a contractually

unauthorized forum on a contract to which Defendants are not parties—while ignoring the only contract that actually exists between Plaintiff and SKL Robotics—is precisely the form of forum manipulation the FAA exists to prevent.

## LEGAL STANDARD

The FAA provides that a written agreement to arbitrate "in any … contract evidencing a transaction involving commerce … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 of the FAA requires the Court, upon application of a party, to stay any action involving claims that are referable to arbitration. *Id.* § 3. Section 4 of the FAA requires the Court, upon a satisfied showing that the parties entered into a valid arbitration agreement and the opposing party is failing to honor it, to enter an order "directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* § 4.

In this Circuit, courts ruling on a motion to compel arbitration apply a two-part inquiry: "(1) whether a valid agreement to arbitrate exists, and (2) whether the issue is within the scope of the agreement." *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016); *see also Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury*

*Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 298 (2010).

## ARGUMENT

### I. A VALID AND ENFORCEABLE AGREEMENT TO ARBITRATE EXISTS BETWEEN PLAINTIFF AND SKL ROBOTICS.

Step one of the *Bazemore* inquiry—the existence of a valid agreement to arbitrate—is plainly satisfied. On January 22, 2025, Plaintiff and SKL Robotics executed the Placement Services Agreement. Plaintiff's CEO drafted and issued it. SKL Robotics' Director countersigned it. The agreement contains an arbitration clause in Section 14.1 that, on its face, is clear, unambiguous, and mandatory. The Placement Services Agreement plainly involves interstate (indeed international) commerce and is therefore squarely within the FAA's reach. *See* 9 U.S.C. § 2; *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995).

The validity of the arbitration clause is reinforced by the agreement's integration clause, which states that the Placement Services Agreement "constitutes the entire agreement between the parties." (Placement Services Agreement § 16.1.) Plaintiff acted under the agreement, invoiced under it, and corresponded with Defendants under it. Plaintiff itself has invoked the agreement as the source of its

claimed entitlement to fees. (*See* Invoice INV-0015-Humanoid.) Plaintiff cannot now disavow it for purposes of avoiding arbitration.

Plaintiff's attempt to evade the arbitration clause by attaching to its complaint a different contract—between itself and a non-party, SKL VC DMCC—fails. As Defendants' motion to dismiss demonstrates, Defendants are not parties to that contract and cannot be bound by its terms. (Doc. 11 at 8–13.) But for purposes of this Motion to Compel Arbitration, even more fundamental: Plaintiff's claims, as pleaded, are predicated on conduct entirely within the four corners of the Placement Services Agreement. Plaintiff's artful pleading cannot defeat the binding arbitration clause that governs the actual subject matter of its claims. *See Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1116 (11th Cir. 2001) (artful pleading cannot avoid arbitration of claims that arise from the contract containing the arbitration clause).

## **II. PLAINTIFF'S CLAIMS FALL SQUARELY WITHIN THE SCOPE OF THE ARBITRATION CLAUSE.**

Step two of the *Bazemore* inquiry is also easily satisfied. The arbitration clause covers "[a]ny dispute arising out of or in connection with this Agreement." (Placement Services Agreement § 14.1.) This is among the broadest possible scope language. "'Arising out of or in connection with' is regarded as a broad clause" that

"'embraces every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute.'" *Telecom Italia*, 248 F.3d at 1116 (citation omitted); *see also Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218 (11th Cir. 2011) ("arising in connection with" language is "broad" and embraces "disputes 'having a significant relationship to the contract'").

Plaintiff's claims are not merely "in connection with" the Placement Services Agreement—they are claims for breach of the very services that agreement governs. Each of the five counts in the operative complaint (breach of contract, promissory estoppel, quantum meruit, unjust enrichment, and expenses of litigation) is predicated on the allegation that SKL Robotics engaged candidates introduced by Plaintiff and failed to pay introduction fees. (*See* Doc. 9 ¶¶ 52–86.) Sections 1, 3, 4, and 5 of the Placement Services Agreement define what an "Introduction" is, when an "Introduction Fee" is payable, how much it is, and how invoicing works. There is no daylight between Plaintiff's claims and the Placement Services Agreement's subject matter.

To the extent Plaintiff attempts to plead its claims under non-contract theories (promissory estoppel, quantum meruit, unjust enrichment), those alternative theories are no less arbitrable. The Eleventh Circuit has held that quasi-contract and equitable claims that arise from the same set of facts as a contract dispute fall within broad

arbitration clauses. *See Doe*, 657 F.3d at 1218; *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 394–95 (5th Cir. 2006). Plaintiff cannot evade arbitration by recharacterizing the same alleged conduct under different legal labels.

## III. THE PARTIES DELEGATED ARBITRABILITY ITSELF TO THE ARBITRATOR.

Even if Plaintiff disputes the scope or applicability of the arbitration clause, that dispute is itself for the arbitrator—not this Court—to decide. The arbitration clause expressly delegates threshold arbitrability questions, providing that "[a]ny dispute arising out of or in connection with this Agreement, *including any question regarding its existence, validity, or termination*," is to be resolved by arbitration. (Placement Services Agreement § 14.1 (emphasis added).) That language is the textbook definition of a delegation clause.

The Supreme Court has held that when the parties "clearly and unmistakably" commit threshold issues of arbitrability to the arbitrator, the court must defer that decision to the arbitrator. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract."); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Two independent features of Section 14.1 satisfy the "clear and unmistakable" standard. First, the clause expressly enumerates "any question regarding [the agreement's] existence, validity, or termination" as a matter to be referred to arbitration. That is exactly the type of explicit delegation language that *Henry Schein* identifies as binding.

Second, the clause incorporates the AAA Commercial Arbitration Rules. The Eleventh Circuit has repeatedly held that incorporation of AAA rules into an arbitration clause is itself "clear and unmistakable" evidence of delegation to the arbitrator. *See Terminix Int'l Co. LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005) ("By incorporating the AAA Rules … the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid."); *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014). AAA Commercial Rule R-7(a) expressly empowers the arbitrator to rule on his or her own jurisdiction, including challenges to the existence, scope, and validity of the arbitration agreement.

Accordingly, even if Plaintiff contests the application of the arbitration clause to its claims, that contest belongs before the arbitrator. The Court's role is limited to enforcing the delegation.

## IV. SOKOLOV MAY ENFORCE THE ARBITRATION CLAUSE AS A NON-SIGNATORY.

Plaintiff names Sokolov individually, but predicates his alleged liability entirely on his role as a principal of SKL Robotics and SKL VC DMCC. (Doc. 9 ¶¶ 9–16, 33, 37.) Plaintiff cannot have it both ways—treating Sokolov as interchangeable with SKL Robotics for purposes of liability while denying him the benefit of the arbitration clause that governs the dispute.

The Eleventh Circuit recognizes that a non-signatory to an arbitration agreement may compel arbitration under principles of equitable estoppel where (1) the claims against the non-signatory rely on the contract containing the arbitration clause, or (2) the signatory raises allegations of substantially interdependent and concerted misconduct between a non-signatory and a signatory. *See MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999), *abrogated on other grounds by Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009); *Lawson v. Life of the South Ins. Co.*, 648 F.3d 1166, 1170–71 (11th Cir. 2011). The Supreme Court has confirmed that "traditional principles of state law" — including equitable estoppel — allow a contract to be enforced by or against non-signatories. *Arthur Andersen*, 556 U.S. at 631.

Both branches of equitable estoppel apply here. First, Plaintiff's claims against Sokolov are entirely derivative of the contractual relationship: every alleged wrong by Sokolov is alleged to have occurred in connection with the services and payments governed by the Placement Services Agreement. (*See* Doc. 9 ¶¶ 33, 37.) Second, Plaintiff explicitly alleges that Sokolov and SKL Robotics acted in concert—indeed, Plaintiff's veil-piercing theory depends on treating them as a single, unified enterprise. (*See* Doc. 9 ¶¶ 21, 34, 38.) Having pleaded such interdependence to extract personal liability, Plaintiff cannot now deny Sokolov the benefit of the arbitration clause that governs the very enterprise it has invoked.

## <u>V. THE COURT SHOULD DISMISS, OR IN THE ALTERNATIVE STAY, THIS ACTION.</u>

Where all of a plaintiff's claims are subject to arbitration, the Eleventh Circuit permits a district court to dismiss the action with prejudice rather than stay it. *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."), *cited approvingly in Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1379 (11th Cir. 2005); *see also Olsher Metals Corp. v. Olsher*, 2003 WL 25600635, at *1 (S.D. Fla. Mar. 24, 2003), *aff'd,*

86 F. App'x 408 (11th Cir. 2003). Because every claim in Plaintiff's operative complaint is arbitrable, dismissal is the proper remedy.

In the alternative, if the Court declines to dismiss, the FAA mandates that the action be stayed. 9 U.S.C. § 3 ("the court … shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement"); *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."). Either way, the litigation in this Court cannot proceed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an order: (i) compelling Plaintiff to submit all of its claims against Defendants to arbitration administered by the American Arbitration Association in New York, New York, in accordance with Section 14.1 of the January 22, 2025 Placement Services Agreement; (ii) dismissing this action with prejudice or, in the alternative, staying it pending the conclusion of arbitration; and (iii) granting such other and further relief as the Court deems just and proper.

Respectfully submitted this 15th day of May, 2026.

Martin & Martin, LLP
Thomas Martin
1100 Peachtree St NE #200
Atlanta, GA 30309
Phone: 404.831.8721
Email: tfmartin66@msn.com

Counsel for Defendants SKL Robotics Ltd
d/b/a Humanoid and Artem Sokolov

## CERTIFICATE OF COMPLIANCE

I certify that this document has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C). Specifically, this document has been prepared using 14-pt Times New Roman font.

This 15th day of May, 2026.

Martin & Martin, LLP
Thomas Martin
1100 Peachtree St NE #200
Atlanta, GA 30309
Phone: 404.831.8721
Email: tfmartin66@msn.com

Counsel for Defendants SKL Robotics Ltd
d/b/a Humanoid and Artem Sokolov

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of May, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record, including:

Granison Eader, Esq.
Jacob Owen Medoff, Esq.
CONWAY EADER LLLP
Hurt Building
50 Hurt Plaza SE, Suite 1142
Atlanta, Georgia 30303
ted@conwayeader.com
jake@conwayeader.com

This 15th day of May, 2026.

/ Martin & Martin, LLP
Thomas Martin
1100 Peachtree St NE #200
Atlanta, GA 30309
Phone: 404.831.8721
Email: tfmartin66@msn.com

Counsel for Defendants SKL Robotics Ltd d/b/a Humanoid and Artem Sokolov